# BALTIMORE CITY COURT

Filed March 15, 1897.

HENRY F. NEW, ET AL.,

VS.

ALCAËUS HOOPER, MAYOR, ETC.

*Charles Marshall* and *John P. Poe* for petitioners.

*Thomas G. Hayes* and *Thomas Ireland Elliott* for respondent.

**WICKES, J.—**

The nine cases, of which this is one, involve precisely the same question, and the decision of one is the decision of all.

Avowedly, they are on their way to the Court of Appeals, and the argument and decision below are but steps in their progress. This Court is, therefore, relieved of much of the responsibility it would otherwise feel, and our conclusions will be stated as briefly as possible. These nine petitioners were severally appointed Commissioners of Public Schools by the two branches of the City Council in joint convention assembled, in accordance with the provisions of Article 44, of the City Code of 1893. Each one of them, armed with his certificate of appointment, applied to the Mayor to administer the oath of office and issue the usual commission. This he refused to do, upon the ground that they had not been legally appointed, for the reason that the ordinance referred to was, in his opinion illegal and *ultra vires*. The only question, therefore, which arises in this case is the validity of the ordinance providing for the election by the two branches of the City Council in joint convention of Public School Commissioners.

The Act of 1817, Chapter 148, Section 2, provides as follows: "The Mayor of the City shall nominate, and by and with the advice and consent of a convention of the two branches of the City Council shall appoint all officers under the corporation."

By the Act of 1825, Chapter 130, it is provided "That the Mayor and City Council of Baltimore shall have power to establish public schools within the City of Baltimore."

By Chapter 162, Section 21, of the same Act it was provided "That the establishment and regulation of the public or primary schools within the City of Baltimore shall be vested in the Mayor and City Council of Baltimore, provided that if the Mayor and City Council shall not within the space of five years after the passage of this act establish a system of public education within said city, then this act to be in full effect within the City of Baltimore."

On the 17th of January, 1827, an ordinance was passed approving of this legislation, and providing, among other things, that "six persons, to be called Commissioners of Public Schools, shall be chosen by the two branches of the City Council in convention," &c. And under this and succeeding ordinances, this method of appointing Public School Commissioners for the City of Baltimore has continued from that time until this controversy arose—a period of seventy years.

By the Act of 1828, Chapter 114, the Mayor and City Council are authorized to "pass ordinances regulating the manner of appointing persons to office," modifying to this extent the Act of 1817, which, as we have seen, required the Mayor to nominate and the Council to confirm.

A careful reading and consideration of the opinion recently delivered by Chief Judge McSherry in Hooper vs. Creager, 35 Atlantic Reports 967, leaves but little doubt that it fully covers the principle of construction which must be applied in this case as the law stood at the adoption of the Constitution of 1864. The question is presented in a different form after that time.

In Hooper vs. Creager the Mayor and City Council were authorized and empowered to levy annually upon the assessable property of the city a direct tax, with full power to provide by ordinance for the collection of the same," &c.

Here the Mayor and City Council are vested with full power and authority to establish a system of free public schools under such ordinances as they may deem fit to enact.

Then the question arose as to the appointment of the agent, the tax collector, to execute the system of taxation. Here the question presented is the proper method of appointing school commissioners, who are the agents to

execute the public school system established in this city. Taking a broad distinction between the power conferred by the Act of 1817 upon the Mayor and City Council to make appointments of all officers under the corporation and the authority to prescribe a new and different manner for the exercise of the power, provided for by the Act of 1828, the Court said: "Now, it cannot be assumed in the face of the explicit language used in the Act of 1828 * * * that the legislature ever intended to give to the municipality of Baltimore the power to pass ordinances delegating to any one the right to name the many important officers that the efficient discharge of the public trusts committed to the corporation may require." And after commenting upon the particular ordinance under consideration, the Court proceeds to say: "Such a construction means that there may be a lawful surrender of the power to appoint, and under the guise of regulating the manner of appointment, a transfer of the whole power itself to an alien. And why not? If the statutes do not place this power in the Mayor and the City Council to be executed by them, but gives them unlimited and unrestricted authority to pass any regulation they may see fit as to the manner of making appointments, there is no line at which logically you must halt, and say the ultimate limit has been reached, beyond which the delegation of the power of appointment shall not go. * * * A construction fraught with consequences so pernicious as well as so dangerous to the order and good government of a great city must be rejected, unless the plain, imperative words of the Act of Assembly are open to no other meaning."

Nor does it relieve the case at bar from the effect of the decision above quoted to invoke the doctrine of contemporaneous interpretation. Not only were the various methods of appointment in the city of Baltimore, including that of School Commissioners, brought to the attention of the Court in the opinion of the learned judge below and in the arguments of counsel, but, judging from the dissenting opinion of Judge Rossum, it was fully considered by the Court and brushed aside as having no force when the "plain, imperative words of the Act of Assembly" admitted of no doubt.

I shall not, therefore, dwell longer upon the question as it stood at the time of the adoption of the Constitution of 1864, for it seems clear that the laws and ordinances in force at that time, as construed by the Court of Appeals, admitted of no other interpretation than that the power to appoint officers under the corporation resided in the Mayor and City Council, and that neither the one nor the other could be deprived of its exercise. Let us now consider the question in the light of the provisions of the Constitution of 1864 and 1867, and of the laws, and ordinances passed in pursuance thereof. By Article 8, Section 3, of the Constitution of 1864, a State board of education was created, and as to the City of Baltimore, the following language is used:

"The School Commissioners of Baltimore City shall remain as at present constituted, and shall be appointed, as at present, by the Mayor and City Council, subject to such alterations and amendments as may be made from time to time by the General Assembly or the said Mayor and City Council."

In the case of the School Commissioners of Baltimore City vs. State Board of Education, 26 Md. R. 516, the Court of Appeals, in speaking of this provision of the Constitution of 1864, said it was the design of the constitution to include the City of Baltimore in the State system of education, and that the third section provided for the appointment of School Commissioners throughout the State, directing their tenure, mode of appointment, &c. "But as to Baltimore City the School Commissioners there shall remain as at present constituted, and shall be appointed, as at present, by the Mayor and City Council. And again this language "simply acknowledges the existing mode of organization of School Commissioners in that city and their appointment and provides, &c. The fact is that at that time the Mayor had no participation whatever in making these appointments, and never had, unless administering the oath of office and issuing commissions to those named by the Councils could be called participation, which could scarcely be the case.

But the language of the constitution, as interpreted by the Court of Appeals, leaves little doubt that it was intended to affirm and perpetuate the mode of

appointment then practiced in the city. Under this article of the constitution the Act of 1865, Chapter 160, was passed, which contained no provision for the appointment of the said commissioners, but adopted the mode of appointment and the board of commissioners as it then existed.

Following this came the ordinance of 1866, which provided, among other things, for the appointment each year "by the two branches of the City Council in convention assembled of twenty persons to be called commissioners of public schools," &c.

Now it is urged by the learned counsel for the petitioner that whatever invalidity may have attached to the method of appointment prior to that time, that the constitutional provision referred to, and the ordinance of 1866 passed under its authority, settled beyond all question, the legality of the method provided for in the ordinance of 1866. In this view, the learned counsel for the defendant concur and fully admit in their answer, argument and brief that this provision of the organic law, whatever may have been its object, * * * gave legality to the appointment of the commissioners, then holding office, and thereafter to be appointed by the Mayor and City Council under existing ordinance. Claimed on the one hand and conceded on the other, it is needless to discuss further the situation when the constitution of 1867 took effect, on the 5th day of October, of that year. By Article 8, Sections 1 and 2, of that instrument, relating to public schools, it is provided as follows:

"Section 1. The General Assembly at its first session after the adoption of the constitution shall by law establish throughout the State, a thorough and efficient system of free public schools, and shall provide by taxation or otherwise for their maintenance.

Sec. 2. The system of public schools as now constituted shall remain in force until the end of the said first session of the General Assembly, and shall then expire, except so far as adopted or continued by the General Assembly."

Article XI provides for the election of a Mayor and City Council, and gives to them such powers as are now or may hereafter be prescribed by law, and section 8 of the same article provides that "all laws and ordinances now in force and applicable to the City of Baltimore, not inconsistent with this article, shall be and they are hereby continued until changed in due course of law."

In execution of the provision of Article 8, the General Assembly, at the session of 1868, passed the Act known as Chapter 407, establishing a system of public education for the State at large, but continued in the City of Baltimore the system then in force until the close of the first session of the General Assembly. This Act has been repealed and re-enacted from time to time, and now, with immaterial amendments, constitutes the law in force on this subject. Code of 1888, Sections 88 and 89, of Article 77; see also P. L. L. of 1888, Article 4, Sections 776 and 777. By Sub-chapter 7 of the Act of 1868, it is provided as follows:

"The Mayor and City Council of Baltimore shall have full power and authority to establish in said city a system of free public schools, under such ordinances, rules and regulations as they may deem fit and proper to enact and prescribe. They may delegate supervisory powers and control to a board of School Commissioners, &c."

At the argument of this question I was inclined to the opinion that the authority conferred upon the Mayor and City Council by the Act of 1867, being substantially the same as conferred by the Act of 1825, must be subject to the same construction, which under the case of Hooper and Creager we feel bound to place upon the law as it stood prior to the Constitution of 1864.

And such I think must be the construction unless the ordinance of 1866 was continued in force as an ordinance "not inconsistent" with the Constitution of 1867.

To this construction it is very earnestly objected by the counsel for the defendant:

1. That the ordinance, taking life as it did from the constitution of 1864, expired with it in October, 1867, when the new constitution took effect.

I cannot agree with this contention, because if the ordinance was valid when passed and was not inconsistent with the constitution of 1867, it was

continued in force by the very terms of that instrument.

2. It is agreed that because the old acts of 1817 and 1828 were continued in force by the constitution of 1867, that, therefore, the ordinance in question must fall because inconsistent with those acts.

Nor can I yield assent to this proposition. There is no suggestion that the operation of these old laws was suspended during the life of the constitution of 1864, although confessedly modified as to the method of appointing school commissioners in this city by the ordinance of 1866. Why, then, does it follow that the inconsistency between the acts and the ordinance, in the same particular, must be fatal to the existence of the ordinance under the present constitution?

3. It is further urged that the commissioners in office at the time were legislated out of office by the Act of 1868, upon the "due qualification and appointment" of their successors.

Certainly, the act does not state how their successors were to be appointed, and if the ordinance remained in force, an appointment of their successors under its provisions would fully satisfy the requirements of the act. These are the objections, and the only objections, to the validity of the ordinance of 1866, under the constitution of 1867, urged upon the Court in the answer filed in the case in the argument at bar and in the brief subsequently submitted. And if there is no other reason for declaring it void, I think it is safe to say that it remained in force under the constitution of 1867, and having been repeatedly re-enacted since, is still in force in this city. Certainly, it has passed unchallenged during all these years, and if there is any doubt about it, the doctrine of contemporaneous construction may with propriety and force be invoked in its behalf.

I do not know that I need further pursue the subject, for, as was said at the beginning, the cases are all to be submitted as promptly as possible to the better judgment of the Appellate Court.

One other question remains to be disposed of. Article 44, Section 6, of the City Code of 1893, provides that "whenever a vacancy or vacancies shall occur in the Board of Commissioners of Public Schools during the session of the City Council, it shall be the duty of the president of the board to inform the Mayor of such vacancy or vacancies, who shall communicate the same to the First and Second Branches of the City Council, who shall proceed in convention according to their respective rules, to fill said vacancy or vacancies." It is objected by the defendant that this was not complied with.

Apart from the improbability that the Mayor, who is the defendant, would have paid the slightest attention to such a notice, entertaining, as he does, the views set up in his behalf in this proceeding, I am of opinion that the vacancies referred to are not such as are caused by the expiration of the terms for which the School Commissioners were appointed. They are such vacancies as are caused by death, resignation, removal from the ward, &c., of which the Council could not have notice, unless communicated in some official way.

The objection, I think, is entirely technical, under all the circumstances, even if the provision of the City Code applies, and ought not to be permitted to delay a determination of the important question involved in this proceeding.

I am, therefore, of the opinion that the demurrer filed to the answer of the defendant be sustained, and that the writ of mandamus issue as prayed.